# THE STATE OF SOUTH CAROLINA
## In The Supreme Court

In the Matter of Lawrence J. Purvis, Jr., Respondent.

Appellate Case No. 2024-000453

---

Opinion No. 28244
Submitted October 30, 2024 – Filed November 20, 2024

---

## DISBARRED

---

Disciplinary Counsel William M. Blitch, Jr., and Senior
Assistant Disciplinary Counsel Kelly Boozer Arnold,
both of Columbia, for the Office of Disciplinary Counsel.

Lawrence J. Purvis, Jr., of Darlington, pro se.

---

**PER CURIAM:**   In this attorney disciplinary matter, Respondent and the Office
of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by
Consent (Agreement) pursuant to Rule 21 of the Rules for Lawyer Disciplinary
Enforcement (RLDE) contained in Rule 413 of the South Carolina Appellate Court
Rules (SCACR).  In the Agreement, Respondent admits misconduct, agrees to pay
costs, and consents to the imposition of a three-year definite suspension or
disbarment, along with other conditions of discipline.  We accept the Agreement
and disbar Respondent from the practice of law in this state.  The facts, as set forth
in the Agreement, are as follows.

## I.

This Agreement relates to fifteen complaints filed between 2018 and 2022, which
arise from twelve separate matters.  In addition to these complaints, Respondent
admitted other misconduct during ODC's investigation that constitutes grounds for
discipline.

## Matter A

In June 2017, Client A hired Respondent to assist her with a divorce and paid $3,000. Client A was not satisfied with Respondent's representation; she filed a complaint with the Resolution of Fee Disputes Board of the South Carolina Bar (Board) and was awarded $3,000 in June 2018. The Board served Respondent with its decision on June 20, 2018. On October 5, 2018, the Board issued a Certificate of Non-Compliance stating Respondent failed to pay the award granted to Client A. The Board subsequently notified ODC of Respondent's non-compliance.

Respondent appeared and gave testimony under oath to ODC on January 20, 2022, and October 27, 2022. At the January 2022 interview, Respondent testified that he disagreed Client A was entitled to reimbursement for any fees and that he believed he had earned the $3,000. However, Respondent acknowledged that he did not appeal the Board award, and thus, he is required to pay it. Respondent has not paid the Board award and does not have the funds to do so. *See* Rule 19 of Rule 416, SCACR (establishing that a decision of the Board is final, binding on the parties, and the parties must comply with the decision within thirty days).

## Matter B

Client B retained Respondent to assist with the adoption of her grandson and paid Respondent $3,500 pursuant to his general retainer agreement dated March 23, 2018. Even though Respondent reassured Client B that he would file the adoption pleadings quickly, Respondent did not file the pleadings for almost two months. At times, Respondent failed to communicate with Client B about the case, which caused Client B to request status updates from Respondent. Also, at times, Respondent failed to timely respond to Client B's reasonable requests for information, including Client B's requests for the hearing date to finalize the adoption. On her own, Client B contacted the family court clerk's office to obtain the hearing date.

On December 10, 2018, Respondent failed to appear for the adoption hearing without communicating with Client B to explain his absence. Respondent represented that he was prepared for the hearing but requested a continuance from the family court due to illness. Respondent failed to inform Client B of both the continuance and the reason for the continuance. Client B only learned of the continuance when she appeared at court. At that time, Client B also learned that Respondent failed to have a guardian ad litem appointed for the minor child.

Client B attempted to reach Respondent to fire him that same day and for several days after without success. Respondent eventually respondent to Client B by text on December 19, 2018, in which he stated he would return Client B's client file and offered to include a letter explaining his absence. Client B retained other counsel to complete the adoption case.

After Client B terminated his representation, Respondent also failed to return unearned fees to Client B. Respondent's fee agreement did not contain the language required to charge an advance fee, and Respondent failed to deposit the unearned fees into a trust account or safeguard those funds separately from his personal funds. Further, Respondent failed to maintain and retain proper financial records.

ODC mailed Respondent a Notice of Investigation on March 14, 2019, requesting a response to the complaint within fifteen days. Respondent failed to timely respond, and ODC served Respondent with a letter pursuant to *In re Treacy*, 277 S.C. 514, 290 S.E.2d 240 (1982), on May 14, 2019, again requesting Respondent's response. ODC received Respondent's response to the Notice of Investigation on August 2, 2019.

In addition to filing a complaint with ODC, Client B filed a complaint with the Board and was awarded $3,500 in February 2021. The Board served Respondent with its decision on February 25, 2021. On April 15, 2021, the Board issued a Certificate of Non-Compliance stating Respondent failed to pay the award granted to Client B. The Board subsequently notified ODC of Respondent's non-compliance. *See* Rule 19 of Rule 416, SCACR (establishing that a decision of the Board is final, binding on the parties, and the parties must comply with the decision within thirty days).

At the January 2022 interview, Respondent admitted he had not paid the Board award even though he previously had the funds to pay the award at the time of his response to ODC in August 2019. Respondent has not paid the Board award and no longer has the funds to do so.

Respondent admits his conduct in this matter violated the following provisions of the Rules of Professional Conduct (RPC), Rule 407, SCACR: Rule 1.1 (requiring competence); Rule 1.3 (requiring diligence); Rule 1.4 (requiring communication); Rule 1.5(f) (requiring a written fee agreement that must include specified criteria for an advance fee to be permissible); Rule 1.15(a) (requiring a lawyer to hold client funds separate from the lawyer's own funds and to comply with the

recordkeeping requirements of Rule 417, SCACR); Rule 1.15(c) (requiring a lawyer to deposit unearned fees in trust and allowing withdrawal only as fees are earned); Rule 1.15(d) (requiring that a lawyer promptly deliver to the client any funds or other property that the client is entitled to receive); Rule 1.16(d) (requiring a lawyer, upon termination of representation, to surrender papers and property to which the client is entitled and refund any unearned fee or expense); Rule 3.2 (requiring reasonable efforts to expedite litigation); Rule 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a lawful demand for information from a disciplinary authority); Rule 8.4(a) (prohibiting a violation of the RPC); and Rule 8.4(e) (prohibiting conduct that is prejudicial to the administration of justice). Respondent's conduct also violated the financial recordkeeping requirements in Rule 417, SCACR.

## Matter C

Respondent represented Client C in various domestic matters. On May 28, 2019, ODC received Client C's allegations of misconduct against Respondent.

ODC mailed Respondent a Notice of Investigation on June 3, 2019, requesting a response to the complaint within fifteen days. Respondent failed to timely respond, and ODC served Respondent with a *Treacy* letter on July 15, 2019, again requesting Respondent's response. ODC received Respondent's response to the Notice of Investigation on August 28, 2019.

Although ODC's investigation of Client C's allegations did not reveal clear and convincing evidence of misconduct by Respondent, Respondent admits that his conduct in this matter violated Rule 8.1(b), RPC, Rule 407, SCACR (prohibiting a lawyer from knowingly failing to respond to a lawful demand for information from a disciplinary authority).

## Matter D

Client D retained Respondent to prepare a separation agreement and paid Respondent $1,500 pursuant to Respondent's general retainer agreement dated February 21, 2018. At times, Respondent failed to communicate with Client D, which caused Client D to request status updates from Respondent. Also, at times, Respondent failed to timely respond to Client D's reasonable requests for information about the status of the separation agreement and ultimately failed to give the final version of the separation agreement to Client D.

In March 2019, Client D met with Respondent and retained him to handle a divorce in lieu of the separation Client D had previously sought. On April 11, 2019, Client D paid Respondent an additional $500, at Respondent's request, for Respondent to handle the divorce. There was no amended or new written fee agreement. Respondent never completed Client D's divorce pleadings; however, Respondent repeatedly informed Client D that the pleadings had been filed with the family court and that Respondent was waiting on a hearing date. Respondent repeatedly lied to Client D about having filed the divorce pleadings and the status of the divorce proceedings. Client D retained other counsel to finalize the divorce case.

Respondent failed to return unearned fees to Client D, his fee agreement did not contain the language required to charge an advance fee, and there was no new fee agreement for the $500 fee. Respondent also failed to deposit the unearned fees into a trust account or an account separate from Respondent's personal funds. Further, Respondent failed to maintain and retain financial records.

In addition to filing a complaint with ODC, Client D filed a fee dispute complaint with the Board and was awarded $1,300. The Board served Respondent with its decision on March 4, 2020. On June 3, 2020, the Board filed a Certificate of Non-Compliance stating Respondent failed to pay the award granted to Client D. The Board subsequently notified ODC of Respondent's non-compliance.

During the January 2022 interview, Respondent testified under oath that he has not paid the Board award and does not have the funds to do so. *See* Rule 19 of Rule 416, SCACR (establishing that a decision of the Board is final, binding on the parties, and the parties must comply with the decision within thirty days).

Respondent admits that his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence); Rule 1.4 (requiring communication); Rule 1.5(f) (requiring a written fee agreement that must include specified criteria for an advance fee to be permissible); Rule 1.15(a) (requiring a lawyer to hold client funds separate from the lawyer's own funds and to comply with the recordkeeping requirements of Rule 417, SCACR); Rule 1.15(c) (requiring a lawyer to deposit unearned fees in trust and allowing withdrawal only as fees are earned); Rule 1.15(d) (requiring a lawyer to promptly deliver funds to third parties); Rule 1.16(d) (requiring a lawyer, upon termination of representation, to surrender papers and property to which the client is entitled and refund any unearned fee or expense); Rule 3.2 (requiring reasonable efforts to expedite litigation); Rule 8.4(a) (prohibiting a violation of the RPC);

Rule 8.4(d) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice). Respondent's conduct also violated the financial recordkeeping requirements in Rule 417, SCACR.

**Matter E**

In February 2016, Client E retained Respondent to represent him in a workers' compensation matter. In 2018, Respondent joined another law firm and continued to represent Client E. Client E and Respondent agreed in writing to Respondent receiving a 25% contingency fee of any settlement plus costs. On September 6, 2018, Respondent emailed opposing counsel agreeing to settle Client E's claim on a full and final basis for $160,000. On September 20, 2018, opposing counsel mailed the settlement documents and the settlement check to Respondent. On September 26, 2018, Respondent emailed opposing counsel and acknowledged receipt of the settlement documents. That same day, the settlement check was deposited into a bank account belonging to Respondent's firm at the time.

Respondent failed to return the signed settlement documents to opposing counsel. Opposing counsel followed up with Respondent to obtain the signed settlement documents on five separate occasions—October 18, 2018; October 23, 2018; October 25, 2018; November 19, 2018; and December 14, 2018—but Respondent never returned the signed settlement documents.

On December 14, 2018, opposing counsel notified Respondent that he intended to file a motion with the Workers' Compensation Commission (WCC) to close the file based on Client E's refusal to sign and return the settlement documents. Opposing counsel filed his first Motion to Certify Form 19 on December 18, 2018. However, Respondent had never registered on the WCC's eCase system. Therefore, the WCC had no record that Respondent represented Client E, and the WCC did not process opposing counsel's December 18, 2018 motion because Client E was not served with a copy of the motion. Opposing counsel re-filed the Motion to Certify Form 19 on December 31, 2018. On January 4, 2019, a WCC Commissioner granted Defendants' Motion to Certify Form 19, and following receipt of the Commissioner's Order, opposing counsel proceeded to close Client E's matter. At the time he undertook representation of Client E, Respondent had never handled a workers' compensation case. Respondent failed to educate himself or seek the assistance of a more experienced lawyer and lacked the requisite knowledge and skill to represent Client E.

Regarding Client E's settlement proceeds, Respondent's former law firm disbursed $109,965 of the $118,965 in settlement proceeds directly to Client E. After Respondent separated from the firm, the firm disbursed the remaining $9,000 of Client E's settlement proceeds to Respondent in January 2019. Respondent failed to hold Client E's proceeds separate from his personal funds and failed to disburse the remaining $9,000 to Client E. During the January 2022 interview, Respondent testified under oath that he had not disbursed these funds to Client E and did not have the funds to do so.

Respondent admits that his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.1 (requiring competence); Rule 1.3 (requiring diligence); Rule 1.4 (requiring communication); Rule 1.15(a) (requiring a lawyer to hold client funds separate from the lawyer's own funds); Rule 1.15(d) (requiring a lawyer to promptly deliver funds that the client is entitled to receive); Rule 1.16(d) (requiring a lawyer, upon termination of representation, to surrender to the client all funds and other property); Rule 8.4(a) (prohibiting a violation of the RPC); Rule 8.4(d) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice).

## Matter F

Client F hired Respondent for a divorce action and paid Respondent $1,000. One week later, Client F fired Respondent and requested the $1,000 fee be returned. Respondent refused to return any portion of the fee, informing Client F that the fee had been earned. Client F filed a fee dispute complaint with the Board and was awarded $1,000 in July 2019. The Board served Respondent with its decision on July 10, 2019. On September 24, 2019, the Board issued a Certificate of Non-Compliance stating Respondent failed to comply with the award granted to Client F. The Board subsequently notified ODC of Respondent's non-compliance.

During the January 2022 interview, Respondent testified under oath that he had not paid the Board award and did not have the funds to do so. *See* Rule 19 of Rule 416, SCACR (establishing that a decision of the Board is final, binding on the parties, and the parties must comply with the decision within thirty days).

## Matter G

Client G retained Respondent to represent him in a divorce action and paid

Respondent a $3,500 retainer fee[1] pursuant to Respondent's general retainer agreement dated January 17, 2020. Client G also retained Respondent to defend him against a domestic violence charge and paid Respondent a $1,500 "flat fee retainer" pursuant to a separate general retainer agreement dated February 5, 2020. Respondent's fee agreements did not contain the language required to charge an advance fee.

Regarding the divorce case, Respondent repeatedly led Client G to believe Respondent would be filing divorce pleadings on his behalf, but Respondent ultimately failed to do so, which resulted in Client G's estranged wife filing first. At times, Respondent failed to communicate with Client G about his case, which caused Client G to request status updates from Respondent. Also, at times, Respondent failed to respond to Client G's reasonable requests for information about his case. After the temporary hearing, Respondent failed to give Client G a copy of the temporary order and failed to inform Client G of the date his first alimony and child support payments were scheduled to begin. Respondent then stopped communicating with Client G completely. In January 2021, Client G retained other counsel to complete the divorce case.

Regarding Client G's criminal case, Respondent failed to timely respond to the Solicitor's efforts to resolve Client G's case and failed to advocate for Client G's interests, specifically regarding Client G's participation in a pre-trial intervention program (PTI). At times, Respondent failed to communicate with Client G about his case, which caused Client G to request status updates from Respondent. Also, at times, Respondent failed to respond to Client G's reasonable requests for information about his case. Respondent failed to discuss PTI with Client G as a possible way to resolve his case. Respondent eventually informed Client G about the PTI option, and Respondent told Client G to give him the $150 PTI application fee. Client G paid Respondent $150 on October 7, 2020. Respondent then stopped communicating with Client G completely. In January 2021, Client G contacted the Solicitor's Office and learned that Respondent never submitted his PTI application or the application fee. On his own, Client G completed the PTI application, paid the application fee, successfully completed PTI, and had his record expunged. Respondent failed to deposit the unearned fees and unpaid PTI application fee into a trust account or an account separate from Respondent's personal funds. Additionally, Respondent failed to maintain and retain financial records.

---

[1] Per Respondent's retainer agreement, Client G paid Respondent $1,500 at the time of agreement and $150 every two weeks until Respondent's retainer was paid in full.

During the January 2022 interview, Respondent provided false testimony to ODC stating that Client G and his wife had reconciled, which Respondent claimed was the cause of Client G terminating Respondent's services.

Respondent admits that his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence); Rule 1.4 (requiring communication); Rule 1.5(f) (requiring a written fee agreement that must include specified criteria for an advance fee to be permissible); Rule 1.15(a) (requiring a lawyer to hold client funds separate from the lawyer's own funds and to comply with the recordkeeping requirements of Rule 417, SCACR); Rule 1.15(c) (requiring a lawyer to deposit unearned fees in trust and allowing withdrawal only as fees are earned); Rule 1.15(d) (requiring a lawyer to promptly deliver funds to third parties); Rule 3.2 (requiring reasonable efforts to expedite litigation); Rule 8.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact in connection with a disciplinary matter); Rule 8.4(a) (prohibiting a violation of the RPC); Rule 8.4(d) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice). Respondent's conduct also violated the financial recordkeeping requirements in Rule 417, SCACR.

## Matter H

Client H retained Respondent to defend her against a Rule to Show Cause (RTSC) filed by her child's father, to file a RTSC against her child's father, and to amend the existing final order to correct the child support calculation. Client H paid Respondent $1,500 pursuant to Respondent's general retainer agreement dated February 5, 2020.

The RTSC hearing against Client H that was scheduled for March 18, 2020, was postponed indefinitely due to COVID-19 court shutdowns. Although Respondent drafted Client H's RTSC against her child's father, Respondent led Client H to believe he had filed the RTSC, which he never did. During the COVID-19 shutdown, Respondent failed to reasonably communicate with Client H, which caused Client H to contact Respondent for status updates. At times, Respondent failed to respond to Client H's reasonable requests for information.

The COVID-19 restrictions were lifted to allow in-person family court proceedings in March 2021. Respondent contacted Client H by text on April 23, 2021, asking if Client H wanted him to schedule the RTSC against her child's father. Client H

agreed and provided Respondent with dates that she was unavailable. Respondent told Client H that he would prepare a hearing request and instructed Client H to pay him $100 for drafting the documents and the court filing fee. When Client H asked whether her retainer had been depleted, Respondent informed Client H that he was saving it for his court appearance. Client H paid Respondent that same day. There was no amended or new written fee agreement. On April 26, 2021, Client H contacted Respondent by text requesting a status update as to the court date, and Respondent responded that he had submitted the necessary documents and that the court should respond within the next couple of days. Respondent informed Client H that he would contact her when the hearing was scheduled.

Having received no further updates from Respondent, on May 10, 2021, Client H texted Respondent, and he responded that he would check with the court that day. On May 11, 2021, Client H texted requesting to speak with Respondent without response. On May 12, 2021, Client H texted Respondent again, asking to speak with him, and Respondent responded he would call her later that same day. In the meantime, Client H contacted the family court clerk's office and learned Respondent had never filed the RTSC. When Client H informed Respondent later that day what she had learned, Respondent told her that the RTSC hearing procedures had changed, and he now had to personally file the RTSC. Respondent told Client H that he would file the RTSC on Friday, May 14, 2021. Throughout the day on May 14, 2021, Client H made several unsuccessful attempts to reach Respondent to confirm he filed the RTSC. At 5:34 p.m. on May 14, 2021, Respondent responded, informing Client H that he was stuck in North Carolina due to a gasoline shortage. Respondent promised to file the RTSC on Monday, May 17, 2021.

On May 17, 2021, Client H attempted to reach Respondent twice during the day without success. Respondent responded at 7:04 p.m. stating he was delayed after being stuck in North Carolina and would get to South Carolina in the next couple of days to file the RTSC. On May 18, 2021, Client H sent Respondent an email, a text, and a letter terminating his services and asking him to withdraw from her case. Respondent did not respond. Client H contacted the family court clerk's office again and learned that Respondent had never filed a notice of appearance on her behalf.

Respondent's fee agreement did not contain the language required to charge an advance fee, and there was no written fee agreement for the $100 drafting and filing fee. Respondent also failed to deposit the unearned fees and unpaid filing

fee into a trust account or an account separate from Respondent's personal funds, and he failed to maintain and retain financial records.

ODC sent Respondent a Notice of Investigation on June 1, 2021, requesting a response to the complaint within fifteen days. Respondent failed to timely respond, and ODC served Respondent with a *Treacy* letter on August 19, 2021, again requesting Respondent's response. ODC received Respondent's response to the Notice of Investigation on October 12, 2021.

Respondent admits that his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence); Rule 1.4 (requiring communication); Rule 1.5(f) (requiring a written fee agreement that must include specified criteria for an advance fee to be permissible); Rule 1.15(a) (requiring a lawyer to hold client funds separate from the lawyer's own funds and to comply with the recordkeeping requirements of Rule 417, SCACR); Rule 1.15(c) (requiring a lawyer to deposit unearned fees in trust and allowing withdrawal only as fees are earned); Rule 1.15(d) (requiring a lawyer to promptly deliver funds the client is entitled to receive); Rule 1.16(d) (requiring a lawyer, upon termination of representation, to surrender papers and property to which the client is entitled and refund any unearned fee or expense); Rule 3.2 (requiring reasonable efforts to expedite litigation); Rule 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a lawful demand for information from a disciplinary authority); Rule 8.4(a) (prohibiting a violation of the RPC); Rule 8.4(d) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice). Respondent's conduct also violated the financial recordkeeping requirements in Rule 417, SCACR.

## Matter I

On January 28, 2022, Client I's spouse hired Respondent to represent Client I in pending criminal matters and paid Respondent a total of $3,000 pursuant to Respondent's general retainer agreement on behalf of Client I.

This Court placed Respondent on interim suspension on February 7, 2022; however, Respondent failed to notify Client I at any point of Respondent's interim suspension and consequent inability to act as an attorney.[2] Instead, on February

---

[2] On February 22, 2022, Respondent filed with the Court an affidavit pursuant to Rule 30, RLDE, Rule 413, SCACR, indicating he had complied with the requirement

11, 2022, Respondent solicited the remaining retainer amount of $1,200 from Client I's spouse stating that Client I had an upcoming court hearing on February 14, 2022. During the October 2022 interview with ODC, Respondent admitted he solicited the $1,200 from Client I's spouse knowing his license to practice law had been suspended. On February 15, 2022, Respondent refunded $300 to Client I.

Respondent's fee agreement did not contain the language required to charge an advance fee, and Respondent failed to deposit the unearned fees into a trust account or an account separate from Respondent's personal funds. Except for a portion of a Cash App statement[3] reflecting Client I's two payments of $600 on February 11, 2022, and Respondent's $300 refund to Client I's spouse on February 15, 2022, Respondent failed to maintain and retain financial records.

ODC sent Respondent a Notice of Investigation on February 25, 2022, requesting a response to the complaint within fifteen days. Respondent failed to timely respond, and ODC served Respondent with a *Treacy* letter on July 11, 2022, again requesting Respondent's response. Respondent failed to submit a written response but gave testimony under oath regarding this matter during the October 2022 interview.

Respondent admits that his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.4 (requiring communication); Rule 1.5(f) (requiring a written fee agreement that must include specified criteria for an advance fee to be permissible); Rule 1.15(a) (requiring a lawyer to keep complete records of accounts holding client funds and to comply with the recordkeeping requirements of Rule 417, SCACR); Rule 1.15(c) (requiring a lawyer to deposit unearned fees in trust and allowing withdrawal only as fees are earned); Rule 1.15(d) (requiring a lawyer to promptly deliver funds to third parties); Rule 1.16(d) (requiring a lawyer, upon termination of representation, to surrender papers and property to which the client is entitled and refund any unearned fee or expense); Rule 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal); Rule 4.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact or law to a third

that he notify all clients of his suspension and consequent inability to act as an attorney.

[3] Cash App is a digital financial services platform that allows users to send and receive money electronically. Cash App Home Page, https://cash.app/ (last visited Oct. 11, 2024).

person in the course of representing a client); Rule 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a lawful demand for information from a disciplinary authority); Rule 8.4(a) (prohibiting a violation of the RPC); Rule 8.4(d) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice). Respondent's conduct also violated the financial recordkeeping requirements in Rule 417, SCACR, as well as Rule 30, RLDE, Rule 413, SCACR, which requires a suspended lawyer to notify clients of his suspension.

## Matter J

Client J's father retained Respondent to defend his son, Client J, in a driving under the influence (DUI) matter and paid Respondent a $3,500 "flat fee retainer" pursuant to Respondent's general retainer agreement dated November 7, 2019. Respondent failed to reasonably communicate with Client J about his efforts to resolve the case, which caused Client J's father, on his Client J's behalf, to repeatedly contact Respondent for status updates. At times, Respondent failed to timely respond to reasonable requests for information.

In November 2021, Respondent negotiated a favorable plea deal reducing the DUI charge to reckless driving with payment of a $440 court fine. Respondent requested Client J's father pay the fine directly to him. On November 23, 2021, Client J's father paid $440 on behalf of Client J. Respondent led both Client J's father and Client J to believe Respondent would be submitting his client's plea affidavit and paying the court fine to resolve the case. Although Respondent submitted Client J's plea affidavit to the summary court, Respondent never paid Client J's court fine, which caused the Client J to receive a Summons for Non-Payment of Scheduled Time Payment on February 16, 2022. This Court placed Respondent on interim suspension on February 7, 2022; however, Respondent failed to notify Client J at any point of Respondent's interim suspension and consequent inability to act as an attorney. Other counsel was retained to resolve the non-payment issue and finalize Client J's case.

Respondent's fee agreement did not contain the language required to charge an advance fee, and Respondent failed to deposit the unearned fees and the unpaid $440 court fine into a trust account or an account separate from Respondent's personal funds. Further, Respondent failed to maintain and retain financial records.

ODC sent Respondent a Notice of Investigation on May 17, 2022, requesting a response to the complaint within fifteen days. Respondent failed to timely respond, and ODC served Respondent with a *Treacy* letter on July 11, 2022, again requesting Respondent's response. Respondent failed to submit a written response but gave testimony under oath regarding this matter during the October 2022 interview.

Respondent admits that his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence); Rule 1.4 (requiring communication); Rule 1.5(f) (requiring a written fee agreement that must include specified criteria for an advance fee to be permissible); Rule 1.15(a) (requiring a lawyer to keep complete records of accounts holding client funds and to comply with the recordkeeping requirements of Rule 417, SCACR); Rule 1.15(c) (requiring a lawyer to deposit unearned fees in trust and allowing withdrawal only as fees are earned); Rule 1.15(d) (requiring a lawyer to promptly deliver funds to third parties); Rule 1.16(d) (requiring a lawyer, upon termination of representation, to surrender papers and property to which the client is entitled and refund any unearned fee or expense); Rule 4.1(a) (prohibiting a lawyer from knowingly making a false statement of material fact or law to a third person in the course of representing a client); Rule 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a lawful demand for information from a disciplinary authority); Rule 8.4(a) (prohibiting a violation of the RPC); Rule 8.4(d) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice). Respondent's conduct also violated the financial recordkeeping requirements in Rule 417, SCACR, as well as Rule 30, RLDE, Rule 413, SCACR, which requires a suspended lawyer to notify clients of his suspension.

**Matter K**

On March 18, 2022, ODC received Client K's allegation that he paid Respondent $100 on February 10, 2022, after Respondent was placed on interim suspension on February 7, 2022. During the October 2022 interview with ODC, Respondent explained that he had represented Client K in numerous matters over the years, and on January 6, 2022, Client K hired Respondent to defend him in a criminal domestic violence matter. Respondent represented that Client K was making payments to Respondent for legal work he performed prior to his suspension. Respondent represents that he informed Client K by phone of his interim suspension after February 10, 2022, but not by registered or certified mail, return receipt requested. Except for a portion of a Cash App statement reflecting Client

K's $100 payment on February 10, 2022, Respondent failed to maintain and retain financial records.

ODC sent Respondent a Notice of Investigation on March 25, 2022, requesting a response to the complaint within fifteen days. When no response was received, ODC served Respondent with a *Treacy* letter on July 11, 2022, again requesting Respondent's response. Respondent failed to submit a written response but gave testimony under oath regarding this matter during the October 2022 interview.

Respondent admits that his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.15(a) (requiring a lawyer to keep complete records of accounts holding client funds and to comply with the recordkeeping requirements of Rule 417, SCACR); Rule 3.4(c) (prohibiting a lawyer from knowingly disobeying an obligation under the rules of a tribunal); Rule 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a lawful demand for information from a disciplinary authority); Rule 8.4(a) (prohibiting a violation of the RPC); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice). Respondent's conduct also violated the financial recordkeeping requirements in Rule 417, SCACR as well as Rule 30, RLDE, Rule 413, SCACR, which requires a suspended lawyer to notify clients of his suspension.

## Matter L

On June 5, 2020, Client L retained Respondent to defend her against four criminal charges. Client L paid Respondent in installments for a total of $3,500. Client L also paid Respondent $200 for her criminal record to be expunged. Respondent failed to communicate with Client L about her case, which caused Client L to contact Respondent for status updates. At times, Respondent failed to respond to Client L's reasonable requests for information. Respondent also failed to provide a copy of the discovery in her case to Client L despite her repeated requests for it. The Solicitor's Office ultimately dismissed Client L's criminal charges. However, Respondent failed to seek expungement of the dismissed charges from Client L's criminal record. On her own, Client L obtained the expungement of her criminal record.

ODC mailed Respondent a Notice of Investigation on December 1, 2022, requesting a response to the complaint within fifteen days. When no response was received, ODC emailed Respondent on January 17, 2023, again requesting Respondent's response. Respondent never submitted a written response.

Respondent admits that his conduct in this matter violated the following provisions of the Rules of Professional Conduct, Rule 407, SCACR: Rule 1.3 (requiring diligence); Rule 1.4 (requiring communication); Rule 1.15(d) (requiring a lawyer to promptly deliver funds to third parties); Rule 1.16(d) (requiring a lawyer, upon termination of representation, to surrender papers and property to which the client is entitled and refund any unearned fee or expense); Rule 8.1(b) (prohibiting a lawyer from knowingly failing to respond to a lawful demand for information from a disciplinary authority); Rule 8.4(a) (prohibiting a violation of the RPC); and Rule 8.4(e) (prohibiting conduct prejudicial to the administration of justice). Respondent's conduct also violated the financial recordkeeping requirements in Rule 417, SCACR.

## Additional Misconduct

During ODC's investigation, Respondent candidly disclosed his long history of substance abuse issues, specifically cocaine and alcohol addiction. Respondent disclosed that while practicing law, he used cocaine off and on between 2005 and 2017 and then more frequently, sometimes daily, between 2017 and June 2019. Respondent received substance abuse treatment at an in-patient facility from June 2019 to July 2019. Respondent relapsed with alcohol in both May 2020 and November 2021; he relapsed with both alcohol and cocaine in September 2021. Respondent then received treatment through an outpatient program from June 2022 to August 2022. Respondent represented that he has attended weekly Alcoholics Anonymous meetings since August 2022.

While investigating these matters, ODC discovered that Respondent had been charged with second-degree domestic violence, a misdemeanor, on May 5, 2020. This incident occurred while Respondent was extremely intoxicated. On March 9, 2023, Respondent pled guilty to third-degree domestic violence, a misdemeanor, specifically for striking his wife's head against the floor in the presence of their minor child. Respondent was sentenced to ninety days in prison and a fine of $2,500, suspended on probation for two years, with credit for one day of time served. Respondent was also required to pay court costs of $128.75. Respondent's probation may terminate after eighteen months with full compliance and no violation of the following special probation conditions: substance abuse counseling, random drug/alcohol testing, no contact with the victim except as needed for family court, mental health counseling, completion of a twenty-six-week Batterer's Treatment Program, firearms prohibition, and following any family court orders.

Respondent was also arrested for driving under the influence, first offense, on November 12, 2021. Respondent pled guilty to this charge on February 23, 2023, and was required to pay a fine of $420.

## II.

Respondent admits that his misconduct as set forth above constitutes grounds for discipline under the following provisions of the RLDE, Rule 413, SCACR: Rule 7(a)(1) (providing a violation of the Rules of Professional Conduct is a ground for discipline); Rule 7(a)(5) (providing that engaging in conduct demonstrating an unfitness to practice law is a ground for discipline); and Rule 7(a)(10) (providing that willfully failing to comply with a final decision of the Board is a ground for discipline).

In the Agreement, Respondent admits his wrongdoing and agrees to a three-year definite suspension or disbarment. Respondent also requests that any sanction be imposed retroactively to the date of his interim suspension, to which ODC does not object. Respondent also agrees to certain conditions of discipline as well as to conditions prior to reinstatement or readmission.

Respondent's disciplinary history includes a 2012 public reprimand. *See In re Purvis*, 399 S.C. 378, 731 S.E.2d 888 (2012) (publicly reprimanding Respondent for misconduct by presenting four affidavits to the family court in his client's domestic action that were not signed in Respondent's presence, including one completely falsified affidavit that the client had provided Respondent). Respondent also received a 2016 letter of caution citing various provisions of the RPC, Rule 407, SCACR, including Rule 3.3 (requiring candor toward a tribunal); Rule 8.4(a) (prohibiting a violation of the RPC); Rule 8.4(d) (prohibiting conduct involving dishonesty, fraud, deceit, or misrepresentation); and Rule 8.4(e) (prohibiting conduct that is prejudicial to the administration of justice). *See* Rule 2(s), Rule 413, SCACR (a letter of caution may be considered in a subsequent disciplinary proceeding against the lawyer if the caution or warning contained therein is relevant to the misconduct alleged in the proceedings).

## III.

Based on Respondent's extensive pattern of misconduct, we find disbarment is the appropriate sanction. *See In re Driggers*, 334 S.C. 40, 512 S.E.2d 112 (1999) (disbarring an attorney that had numerous complaints encompassing a multitude of

issues, including but not limited to failing to provide competent representation; failing to keep a client reasonably informed; failing to consult with a client; failing to promptly account for and deliver funds; knowingly failing to respond to disciplinary proceedings; engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation; and engaging in conduct prejudicial to the administration of justice); *In re Morris*, 343 S.C. 651, 541 S.E.2d 844 (2001) (disbarring an attorney that had numerous complaints encompassing a multitude of issues, including but not limited to failing to provide competent representation; failing to keep clients reasonably informed; failing to safeguard the property of clients; failing to expedite litigation; and engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Accordingly, we accept the Agreement and disbar Respondent from the practice of law in this state.[4]

Within fifteen days, Respondent shall surrender his Certificate of Admission to the Practice of Law to the Clerk of this Court. Within thirty days, Respondent shall enter into a payment plan with the Commission on Lawyer Conduct (Commission) to pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission. Additionally, within thirty days Respondent shall enter into a restitution agreement with the Commission for the payment of restitution as follows: (1) to Client E in the amount of $9,000; (2) to the Board for payment of any unpaid fee awards; and (3) to the Lawyer's Fund for Client Protection for the full amount of any payments made to a client on Respondent's behalf. The amount due from Respondent to Client E and the Board shall be reduced by the amount of any payments made by the Lawyer's Fund for Client Protection to or on behalf of Client E or the Board.[5]

---

[4] We decline to impose this sanction retroactively.

[5] Pursuant to the terms of the Agreement, should Respondent seek readmission in the future, he may not submit a petition for readmission unless he first completes the Legal Ethics and Practice Program Ethics School, Trust Account School, and Advertising School. Additionally, Respondent must complete a comprehensive assessment with the South Carolina Bar's Lawyers Helping Lawyers (LHL) program and enter into and comply with the terms of a two-year monitoring contract with LHL, which shall include an ongoing relationship with a monitor designated by LHL. Should this Court determine in the future that Respondent is qualified to be readmitted, Respondent agrees he must report quarterly to the Commission for a period of two years beginning within thirty days of the date of his readmission. The report shall include Respondent's affidavit of compliance and a statement from the LHL monitor. Respondent must also file a final report from

**DISBARRED.**

**KITTREDGE, C.J., FEW, JAMES, HILL and VERDIN, JJ., concur.**

---

the LHL monitor regarding Respondent's compliance with the LHL contract within thirty days of the end of the two-year period; the report must contain the monitor's recommendations for future monitoring, if any.  If further monitoring is recommended, the Commission will determine whether the terms of the monitoring agreement should be extended for another year.